In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 07-2654

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GERMAINE DALHOUSE,

*Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, South Bend Division.
No. 06 CR 105—**Allen Sharp**, *Judge.*

_____

ARGUED APRIL 10, 2008—DECIDED JULY 24, 2008

_____

Before EASTERBROOK, *Chief Judge*, and ROVNER and SYKES,
*Circuit Judges*.

SYKES, *Circuit Judge.* When the government introduces
a defendant's confession to supplement an otherwise
legally inadequate case, the Supreme Court requires
corroborating evidence to show that the confession is
trustworthy. *See Opper v. United States*, 348 U.S. 84, 89
(1954). This "corroboration rule" is at the center of this
case.

Germaine Dalhouse was convicted of carrying a gun
while being an illegal-drug user. *See* 18 U.S.C. § 922(g)(3).

He claims the government was wrongly allowed to present his confession to the jury without first producing corroborating evidence that it was trustworthy. We disagree and affirm his conviction. The corroboration rule is satisfied if the government presents enough evidence independent of the confession to allow a jury to convict. The government did that here, so there was no need for additional corroboration.

## I. Background

Most of the facts are uncontested. Germaine Dalhouse was arrested early one morning by police in Elkhart, Indiana, who subsequently discovered that he was carrying a loaded gun for which he had a permit. He was ultimately released but later admitted to police that he was a habitual marijuana user and that he had both carried the gun and smoked marijuana the day he was arrested. Based in part on these statements, Dalhouse was indicted, tried, and convicted for possessing a gun while being an illegal-drug user. *See* 18 U.S.C. § 922(g)(3).

Dalhouse didn't seriously contest two of the three elements of the crime: that he carried a gun and that the gun crossed state lines. The main issue at trial was the third element: whether he was "an unlawful user of or addicted to any controlled substance" when he possessed the gun. *Id.* On that element the government offered two pieces of evidence. First was the testimony of Christopher "Wing Ding" King, a friend of Dalhouse who was present when he was arrested. King, who is now serving a 40-year state-prison sentence for dealing cocaine, testified that he had smoked marijuana with Dalhouse only minutes before Dalhouse was arrested. King also

testified that he had known Dalhouse for about two and a half months, would see him about every other day, and would smoke marijuana with him whenever they were together. The second piece of evidence was the video-tape of Dalhouse's confession, which was played for the jury. In his confession Dalhouse admitted to daily marijuana use "since high school," admitted to smoking marijuana the day of his arrest, and admitted to carrying a gun the day he was arrested.

Dalhouse's attorney argued to the jury that "Wing Ding" King was a liar and pointed to contradictions between Dalhouse's confession and King's testimony. But his primary trial strategy was to try to keep Dalhouse's confession out of evidence. He argued to the district court that the confession could be admitted only if it was sufficiently corroborated by other evidence, which he claimed was lacking. The court rejected this argument, noting there was ample evidence apart from Dalhouse's confession to send the case—with the confession—to the jury. The jury returned a verdict of guilty. Dalhouse was sentenced and now appeals.

## II. Analysis

The sole issue on appeal is the applicability of the "corroboration rule," a common-law principle that was developed to prevent the government from relying too heavily on confessions, which were once thought to be unreliable. *See generally* 2A CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 414 & n.33 (3d ed. 2000); 1 MCCORMICK ON EVIDENCE § 145 & n.28 (Kenneth S. Broun ed., 6th ed. 2006). The rule—which is premised on the idea that the pressure of criminal investigations may

lead suspects to falsely confess to crimes that never occurred—forbids the government from obtaining a conviction by relying solely on a defendant's confession. What is needed is proof in addition to the defendant's admissions—corroborating evidence—to show that the confession is trustworthy.

The required level of corroboration depends on the government's case. Sometimes the government uses a defendant's admissions to bolster a case that is already legally adequate. When that happens, no additional corroboration is necessary. *See United States v. Calderon*, 348 U.S. 160, 167 (1954). There is independent evidence of the defendant's guilt and therefore no danger that the government is relying solely on the defendant's uncorroborated confession to convict. *See Smith v. United States*, 348 U.S. 147, 156 (1954) (either "independent evidence or corroborated admissions" are sufficient). By contrast, if the government uses the defendant's admissions to prove an element of the crime that can't otherwise be adequately proven, then the defendant's statement must be corroborated. *Opper*, 348 U.S. at 91. Most commonly, that is accomplished by presenting evidence that a few of its key assertions are true, which is sufficient to show that the statement as a whole is trustworthy. *United States v. Trombley*, 733 F.2d 35, 37-38 (6th Cir. 1984).

What the rule accomplishes is open to debate. An impressive number of critics have suggested that the rule is unnecessary, particularly given the development of modern constitutional confession law, notably *Miranda v. Arizona*, 384 U.S. 436 (1966), and the voluntariness requirement, *see Jackson v. Denno*, 378 U.S. 368, 376 (1964), which protect suspects against coercive police interrogations. *See, e.g., United States v. Dickerson*, 163 F.3d 639, 641

n.2 (D.C. Cir. 1999) (criticizing the corroboration rule and citing other critical scholarship); 1 MCCORMICK ON EVIDENCE § 145 & n.28 (same). For our purposes the criticism is beside the point because the Supreme Court has adopted the rule for the federal courts and has neither overruled nor curtailed it. 2A CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 414 & nn.38-40. But it is worth clarifying that the rule is designed to serve different purposes than *Miranda* and the voluntariness requirement. While these doctrines seek to protect suspects from coercive police tactics during custodial interrogations, the corroboration rule is premised on the idea that suspects may give false confessions *voluntarily*. *See Smith*, 348 U.S. at 153. To protect against that, the rule requires prosecutors to present evidence in addition to a defendant's own confession, and this evidentiary "reinforcement" reduces the potential for an erroneous conviction.

This brings us back to Dalhouse's argument. He invokes the corroboration rule to argue that his confession should not have been admitted in the first place. The problem is that the corroboration requirement does not affect the *admissibility* of a confession, at least not in this circuit. *United States v. Grizales*, 859 F.2d 442, 444-45 (7th Cir. 1988); *see also Calderon*, 348 U.S. at 161 (considering corroboration as distinct from admissibility). Instead, it governs the type of evidence necessary for a conviction—essentially, the sufficiency of the evidence. Although this view is not shared by every jurisdiction,[1] it has been

---

[1]  *See, e.g., People v. McMahan*, 548 N.W.2d 199, 201 (Mich. 1996); *see also United States v. Dickerson*, 163 F.3d at 642 (characterizing

(continued...)

the long-standing interpretation in this circuit, and Dalhouse has not given us any reason to reconsider it. Nor do we agree with Dalhouse's claim that we modified this circuit's approach to the corroboration rule in *United States v. Howard*, 179 F.3d 539, 543 (7th Cir. 1999), where we briefly referred to the D.C. Circuit's somewhat different take on the rule in *United States v. Dickerson*, 163 F.3d at 642. That kind of passing reference was not intended—nor would it have sufficed—to overrule well-established circuit precedent, which can be accomplished only explicitly and by an opinion circulated to the whole court. *See* 7TH CIR. R. 40(e); *Brooks v. Walls*, 279 F.3d 518, 522-23 (7th Cir. 2002).

What Dalhouse might have argued instead is that there was too little evidence to convict him independent of his confession. But that argument, too, would fail. We review sufficiency-of-the-evidence challenges de novo, *United States v. Fujii*, 301 F.3d 535, 539 (7th Cir. 2002), and view the evidence in the light most favorable to the government, *Grizales*, 859 F.2d at 444. There was plenty of evidence here—independent of the confession—to support a conviction. As we have already noted, Dalhouse concedes the government presented enough independent evidence to prove two out of three elements of the crime.

---

[1] (...continued)
corroboration requirement as "hybrid rule having elements both of admissibility and sufficiency"); *United States v. Sapperstein*, 312 F.2d 694, 696 (4th Cir. 1963) (characterizing corroboration as an admissibility requirement); 1 MCCORMICK ON EVIDENCE § 146 (citing cases). *But see United States v. White*, 77 F. App'x 624 (4th Cir. 2003) (citing *Sapperstein* but evaluating corroboration issue as a sufficiency-of-the-evidence question).

On the disputed element—whether Dalhouse was a marijuana user when he possessed the gun—there was also sufficient independent evidence. "Wing Ding" King testified that he and Dalhouse smoked marijuana regularly and had done so only minutes before Dalhouse was found to have a handgun. That evidence would have allowed the jury to conclude that Dalhouse was a marijuana user. So there was no danger that the government was relying solely on an uncorroborated confession to convict Dalhouse.

It is true, as Dalhouse notes, that King suffered from major credibility problems. Some of King's testimony contradicted earlier statements he had made to police, as well as Dalhouse's statements. King also admitted he had drunk hard liquor and had probably smoked crack cocaine the day of Dalhouse's arrest, both of which might have affected his memory. To make matters worse, King's motive for testifying was open to question: federal prosecutors had apparently offered to recommend leniency in his pending state-court drug case in return for his testimony.

But these credibility issues were for the jury—not for the district court or for us. King claimed to have an accurate memory of the relevant events and swore that his testimony was true. The jury was permitted—though not required—to believe him. The evidence was therefore sufficient, and the judgment of the district court is AFFIRMED.